# IN THE COURT OF APPEALS OF IOWA

———————————

No. 26-0478
Filed June 24, 2026

———————————

**In the Interest of J.M., M.M., and J.S., Minor Children,**

**J.M., Mother,**
Appellant,

**J.M., Father,**
Appellant.

———————————

Appeal from the Iowa District Court for Story County,
The Honorable Hunter W. Thorpe, Judge.

———————————

**AFFIRMED ON BOTH APPEALS**

———————————

James W. Thornton, Ankeny, attorney for appellant mother.

Katherine R.J. Scott, Ames, attorney for appellant father of J.M. and M.M.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney
General, attorneys for appellee State.

Nancy Pietz, Des Moines, attorney and guardian ad litem
for minor children.

———————————

Considered without oral argument
by Schumacher, P.J., and Ahlers and Badding, JJ.
Opinion by Ahlers, J.

**AHLERS, Judge.**

This case centers around a blended family—a married couple, his older child from a prior relationship, her older child from a prior relationship, and the two children they share together. The father consented to the termination of his parental rights to his older child.[1] The juvenile court terminated his parental rights to his two youngest children. And the court also terminated the parental rights of the mother with respect to all three of her children.[2]

The mother and father separately appeal from the termination of their parental rights to their respective children. The father challenges the statutory grounds authorizing termination, including an argument that the Iowa Department of Health and Human Services failed to make reasonable efforts toward reunification. The mother also argues the department failed to make reasonable efforts toward reunification and indirectly challenges the statutory grounds for termination. She also argues that termination is not in the children's best interests and that she should be given additional time to work toward reunification.

We review termination-of-parental-rights cases de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021). Although we are not bound by the juvenile court's factual findings, we give them respectful consideration, especially when assessing the credibility of witnesses. *Id.*

---

[1] The father's parental rights to this child are not at issue in this appeal. The father also has another child who lives in another state and is also not at issue in this appeal.

[2] The juvenile court did not terminate the parental rights of the father to the mother's oldest child. All subsequent references to "the father" in this opinion will refer to the father of the two youngest children at issue.

Our review follows a three-step process of determining whether statutory grounds for termination exist, whether termination is in the child's best interests, and whether an exception should apply to prevent termination. *Id.* at 294. But we do not address any step in this process that is not challenged on appeal. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "After addressing any challenged steps of the three-step process, we then address any additional claims raised by a parent." *In re L.A.*, 20 N.W.3d 529, 532 (Iowa Ct. App. 2025) (en banc).

We begin with the statutory grounds for termination. The juvenile court terminated both parents' respective parental rights pursuant to Iowa Code section 232.116(1)(e) and (f) (2025). As termination was ordered on multiple grounds, we may affirm if any is supported by the record. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We elect to address grounds for termination under section 232.116(1)(f) as to both parents. That ground permits termination upon sufficient proof that (1) the child is four years of age or older; (2) the child has been adjudicated a child in need of assistance; (3) the child has been removed from the physical custody of the parents for at least twelve of the last eighteen months; and (4) the child cannot be returned to the custody of the parents. Iowa Code § 232.116(1)(f).

Both parents limit their challenges to the last element—whether the children could have been safely returned to the respective parents at the time of the termination trial. *See In re R.M.-V.*, 13 N.W.3d 620, 626 (Iowa Ct. App. 2024) (interpreting "at the present time" as used in section 232.116(1)(f)(4) to mean at the time of the termination trial). Following our review of the record, we agree with the juvenile court that the children could not be safely returned to the custody of either parent at the time of the termination trial.

This family's involvement with the juvenile court began after the department received reports that the father's older child, who was seven at the time, was being abused by the parents after the child turned up with a broken nose. The department was also told that the mother was dosing the children with high levels of melatonin. When police officers went to the family home to investigate, they found the youngest two children, then four and two years old, locked in their room, with the locks on the outside of the door. Neither child had been potty trained, and neither child could speak. They also found marijuana and drug paraphernalia in the home. Based on these circumstances, the children were removed from parental custody. The father was charged with assault for his actions against his older child and four counts of child endangerment. The mother was charged with four counts of child endangerment and possession of a controlled substance. The mother pleaded guilty to two counts of child endangerment and possession of marijuana and received a suspended sentence. The father pleaded guilty to two counts of child endangerment and one count of assault causing bodily injury and received deferred judgments.

Once removed from the family home, the mother's older child disclosed that he had been subjected to abuse in the home as well. In a letter he wrote to his mother and stepfather he stated, "if you want me back, you have to admit that . . . you were abusing me [and the other children]." The department agreed it was critical that the parents acknowledge their abuse of the children and accept responsibility for it. But both parents have struggled to meaningfully do so.

The case manager explained at the termination trial that it is critical for the parents to acknowledge their role in the past abuse and neglect, otherwise they will not be able to make meaningful changes and the abuse is

5

likely to recur. And she explained that neither parent has taken meaningful accountability for their past actions. She expanded on the issue by explaining that, while both parents have participated in services, neither has internalized the information and effectuated change in themselves or understands how their conduct has traumatized their children. The juvenile court found the case manager's testimony "to be both credible and informed," and we defer to that credibility determination.

Further, the parents' own testimony at the termination trial supports the case manager's conclusion that the parents have not taken accountability for their actions and do not understand how their actions have impacted the children. The mother denied the factual basis for her guilty plea to child endangerment and testified she only pleaded guilty to "hurry up and close the case." Likewise, the father denied he broke his older child's nose and testified he pleaded guilty to "move the process along."[3]

As such, we agree that the children could not be returned to their respective parents at the time of the termination trial. In doing so, we reject the father's contention that we cannot consider his past conduct toward both his older child and the mother's older child when determining whether his younger two children could be safely returned to him. His past conduct toward any child under his supervision is highly probative of his ability to serve as a safe caregiver. *See, e.g.*, *In re R.A.*, No. 25-1825, 2026 WL 221722, at *1 (Iowa Ct. App. Jan. 28, 2026) (taking into consideration a father's abuse of all four children in his home when determining whether it was in his child's best interests to terminate the father's parental rights).

---

[3] The father claimed the child broke his nose when he slipped and fell on some ice and not during an incident of corporal punishment as the child reported.

But both parents argue that the inability to reunify at the time of the termination trial is due to the department's failure to make reasonable efforts toward reunification. While not a strict substantive requirement for termination, "[t]he State must show reasonable efforts [toward reunification] as a part of its ultimate proof the child[ren] cannot be safely returned to the [custody] of a parent." *In re L.T.*, 924 N.W.2d 521, 527 (Iowa 2019) (first alteration in original) (quoting *In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017)). As this implicates the fourth element under section 232.116(1)(f), we must address the mother's and father's reasonable-efforts arguments before reaching a final conclusion as to whether the statutory grounds for termination are met.

Both parents complain that they did not receive more visitation with the children and argue that additional visitation would have provided more opportunities to demonstrate safe parenting skills and led to reunification. Certainly visitation is an important service for families working toward reunification. But the relevant inquiry is whether the additional services requested by a parent "relate to the ongoing need for removal and remedy that need." *In re I.T.*, No. 24-1209, 2024 WL 4620509, at *3 (Iowa Ct. App. Oct. 30, 2024). The underlying problem here is that the parents refused to accept responsibility for their past actions or appreciate the harm they caused their children through abuse and neglect. The parents do not explain—and we do not discern—how additional visits would have fixed that underlying problem and led to reunification. So we cannot find that the need for removal would have been meaningfully addressed through additional visitation. *See In re C.M.*, No. 25-0435, 2025 WL 1706340, at *2 (Iowa Ct. App. June 18, 2025) (recognizing the additional services requested must go to the ongoing basis for removal). We therefore reject both parents' reasonable-efforts

challenges and conclude the State has established a statutory ground for termination as to both parents.

Next, we address the mother's contention that termination is not in the children's best interests. When making a best-interests determination, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *P.L.*, 778 N.W.2d at 40 (quoting Iowa Code § 232.116(2)). We conclude termination is in the children's best interests. Her oldest child is developing his relationship with his biological father and wants to live with him in another state. The child does not want to go back to his mother's custody, describing her home to the caseworker as "a hellhole." And when that child disclosed suicidal ideation to other adults, the mother reprimanded him rather than expressing concern for his mental health. As for the younger two children, they are making significant progress while in the care of their pre-adoptive foster parents. They have made significant progress with their speech development and in several other areas as well. Because the oldest child does not feel safe with the mother and the development of the younger two children would be best facilitated by adoption into their foster home, we conclude that termination of the mother's rights is in the children's best interests.

Finally, the mother requests additional time to work toward reunification. This is a permissible option under the statute if termination is denied. *See* Iowa Code § 232.117(5) (permitting the court to enter a permanency order under section 232.104 if it decides not to terminate rights); *see also id.* § 232.104(2)(b) (providing a permanency option of giving a parent an additional six months to work toward reunification). But to

exercise this option, the court must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child[ren] from the child[ren]'s home will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b).

We note that the parents were already given a prior six-month extension, but no meaningful progress toward reunification occurred. And the mother fails to identify any changes she expects to occur within the next six months that would remove the barriers to reunification—her refusal to take accountability for her past neglect of the children and the harm she has caused them—to effectuate reunification at the end of an additional six months. So we have no basis to grant the mother additional time.

**AFFIRMED ON BOTH APPEALS.**